AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Middle District of Florida

| | |
|---|---|
| United States of America<br>v.<br><br>SCOTT MATTHEW YOTKA<br><br>*Defendant(s)* | )<br>)<br>) Case No.<br>)   3:21-mj-1443-JBT<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of **September 15, 2021** in the county of **Duval** in the **Middle** District of **Florida**, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 2252(a)(2) | Distribution of child pornography |

This criminal complaint is based on these facts:

See Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Daniel Moxley, Special Agent, FBI
_____
Printed name and title

Sworn to before me and signed in my presence.

Date: 9/17/21

_____
Judge's signature

City and state: Jacksonville, Florida

Joel B. Toomey, United States Magistrate Judge
_____
Printed name and title

## **AFFIDAVIT**

I, Daniel Moxley, being duly sworn, state as follows:

1. I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since July 2017. I am currently assigned to the Jacksonville, Florida Division of the FBI, where I conduct investigations involving, among other criminal offenses, the sexual exploitation of children. Prior to becoming a Special Agent, I served as an Intelligence Analyst and Management and Program Analyst for the FBI for approximately 7 years. I hold Bachelor's Degrees in Economics and Political Science. I have also received law enforcement training from the FBI Academy at Quantico, Virginia. A substantial portion of my duties are dedicated to investigating cases involving crimes against children under the auspices of the FBI's "Innocent Images" National Initiative. Since becoming a Special Agent, I have worked with experienced Special Agents who also investigate child exploitation offenses, and have assisted in the prosecution of cases involving these offenses. In the performance of my duties, I have investigated and assisted in the investigation of matters involving the solicitation, production, receipt, distribution, possession of, and access with intent to view images and videos depicting the sexual exploitation of children. I have also been involved in searches of residences relating to the solicitation, production, receipt, distribution, possession of, and access with intent to view child pornography during the execution of search warrants.

2. Specifically, I have investigated and assisted in the investigation of criminal matters involving the sexual exploitation of children that constituted violations of 18 U.S.C. §§ 2251, 2252, and 2422(b). As a federal agent, I am authorized to investigate and assist in the prosecution of violations of laws of the United States, and to execute search warrants and arrest warrants issued by federal and state courts.

3. The statements contained in this affidavit are based on information I obtained from my personal observations as well as from records and information directly provided to me by other law enforcement officers and personnel. This affidavit is being submitted for the limited purpose of establishing probable cause for the filing of a criminal complaint, and I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause that SCOTT MATTHEW YOTKA, a/k/a user "Scottnjax44," has committed a violation of 18 U.S.C. § 2252(a)(2), that is, knowing distribution of visual depictions of minors engaged in sexually explicit conduct using the Internet.

4. I make this affidavit in support of a criminal complaint against SCOTT MATTHEW YOTKA, a/k/a "Scottnjax44", that is, on or about September 15, 2021, in the Middle District of Florida, SCOTT MATTHEW YOTKA, a/k/a "Scottnjax44", did knowingly distribute visual depictions using facilities of interstate

2

commerce, that is, by cellular telephone via the internet, when the production of the visual depictions involved the use of minors engaging in sexually explicit conduct, and the visual depiction was of such conduct, in violation of 18 U.S.C. § 2252(a)(2).

5. On September 16, 2021, I swore to a search and seizure warrant that was filed before United States Magistrate Joel B. Toomey in Case No. 3:21-mj-1442-JBT. The application and supporting affidavit are attached as Exhibit A and all of the information contained therein is incorporated by reference as if realleged herein.

6. As set forth in Exhibit A and in summary, on September 15, 2021, an FBI Task Force Officer assigned to the FBI Washington Field Office, while acting in an undercover capacity, engaged in a private message conversation on a particular social media application (the "app) with user "Scottnjax44". During that private message conversation, the UC and user "Scottnjax44" engaged in a sexually explicit conversation regarding the sexual exploitation of children. Also during that private message conversation, user "Scottnjax44" sent the UC at least five images and one video that depicted minors engaged in sexually explicit conduct. Also during that private chat conversation, user "Scottnjax44" told the UC that he was employed as an "emergency dispatcher" and works "12 hour shifts." As set forth in the affidavit, responsive documents resulting from emergency disclosure requests to the app company and AT&T concluded IP login activity to the "Scottnjax44" account resolved, in part, to the residence located at 10158 Bradley Road, Jacksonville, FL

32246 and the subscriber listed on that account was "Scott Yotka". Furthermore, responsive documents from an emergency disclosure request to the app company concluded the display name for user "Scottnjax44" was "Scott Yotka".

7. On September 16, 2021, Supervisory Special Agent CJ Goodman told me that he spoke to Jacksonville Sheriff's Office Detective Jessie Maynard who advised him that YOTKA is employed by the Jacksonville Sheriff's Office as a Dispatcher and is scheduled to work a 12 hour shift beginning on September 16, 2021 and concluding on the morning of September 17, 2021.

8. Also on September 16, 2021, FBI Special Agent Danielle Schnur told me that responsive documents resulting from the emergency disclosure request to the app company listed frequent IP login activity from IP addresses 161.243.255.34 to the "Scottnjax44" user account, which resolved to the City of Jacksonville, Ed Ball Building, located in Jacksonville, Florida.

9. On the morning of September 17, 2021, I, together with other FBI agents and law enforcement personnel, executed the federal search warrant at the premises located at 10158 Bradley Road, Jacksonville, FL 32246. YOTKA was exiting his vehicle at the residence there when FBI agents made contact with him and announced their presence as law enforcement officers. FBI SA Jonathan MacDonald advised YOTKA that a search warrant was being executed at the residence and that he was not under arrest. SA MacDonald asked YOTKA if he

4

could use YOTKA's cellular phone in an attempt to contact other occupants of the residence in an effort to execute the search warrant safely, to which YOTKA responded affirmatively. YOTKA was asked to stay outside while the residence was cleared for officer safety. I approached YOTKA for a possible interview. YOTKA agreed to talk to me and FBI Special Agent Leigh Jackson for an interview inside my government vehicle which was parked outside the residence. This interview was recorded on audio.

10. I introduced myself to YOTKA as a Special Agent with the FBI and presented my badge and credentials. I informed YOTKA that he was not under arrest and speaking to me was completely voluntary. I informed YOTKA that a search warrant was being executed at his residence. YOTKA confirmed his name was "Scott Matthew Yotka," his physical address was 10158 Bradley Road, Jacksonville, FL 32246, and his date of birth was 05/XX/1974. YOTKA also told me he was not under the influence of any drugs or intoxicants and that he reads, writes, and understands English. After being advised of his constitutional rights, YOTKA acknowledged those rights, waived those rights, and agreed to speak with us. During this interview, YOTKA stated in substance, and among other things, the following:

    a. YOTKA has lived at the residence located at 10158 Bradley Road in Jacksonville for approximately a year and a half. YOTKA lives at the

5

residence with several other occupants. There is Internet at the residence, which is password protected, and everyone in the house accesses the home WIFI. YOTKA has an Android 8 Plus cellular phone that does not require a password to access and YOTKA uses his cellular phone to access the home WIFI. YOTKA uses his cellular phone mostly to text and call others, but also has several apps, including Kik.

    b. YOTKA's Kik username is "scottnjax44" and YOTKA initially stated he has not accessed his Kik account in over three years, but later admitted accessing his Kik account as recently as that morning. YOTKA initially stated he used Kik for "nothing really," later admitted he used Kik to participate in "local groups", such as "singles" chat rooms, and ultimately admitted to being a member and administrator of a particular public chat room on Kik. YOTKA explained that his role as an administrator of this chat room consisted primarily to verify another user's legitimacy, but sometimes YOTKA would engage in private chat conversations with other members of the group after he verified them. YOTKA stated this chat room consisted of users who are interested in "incest fetishes, little kid things, animal things." A rule of this chat room does not allow users to post images or videos into the public chat room until after they had been a member for at least 12 hours, so users would send YOTKA images and videos, including images and videos of child pornography, via private message, that he would

6

then distribute to the members of this chat room.

c. YOTKA partially recalled a private message conversation he recently had with a Kik user who was a member of this chat room. I showed YOTKA an image of that Kik user's profile, to which he acknowledged was the user he communicated with from this public chat room but again stated he could not remember the details of the conversation.

d. At this point during the interview, YOTKA told me that he no longer wanted to speak to me and wished to exit the vehicle. I told YOTKA that he did not have to speak to me and could exit the vehicle, but was not allowed to enter the residence or vehicles until the execution of the search warrant was complete. YOTKA and I then discussed other details in this investigation, and YOTKA then exited the vehicle.

12. YOTKA remained in the vicinity of the residence for a short period of time. YOTKA then approached SA Leigh Jackson and advised her that he wanted to leave the area. SA Jackson told YOTKA that he could leave but was unable to go into the residence or depart the area with any of the vehicles on the property. YOTKA then advised SA Jackson that he wanted to speak further with the agents and SA Jackson told YOTKA that he must make it clear to the agents that he wished to speak with them again. YOTKA confirmed with SA Jackson that he did want to speak with the agents, but wanted to do so in a location out of view of the residence.

7

13. SA Jackson then told me about her conversation with YOTKA and I approached YOTKA to further inquire about his request. I asked YOTKA if it was true that he told SA Jackson that he wanted to speak to agents again, to which he responded "yes." I then advised YOTKA that in order to speak with us, he needed to make it clear that he wished to do so and was doing it voluntarily, to which YOTKA confirmed was accurate. YOTKA then stated that although he did want to speak with the agents again, he wanted to do so in a location out of view of the residence. I asked YOTKA if it was suitable to conduct the interview in my government vehicle again, but move it towards the other end of the street, out of view of the residence, to which YOTKA confirmed that was acceptable. YOTKA then got in the passenger seat of my government vehicle and he, I, and SA Jackson drove the vehicle from the residence to the end of Bradley Road, approximately 200 yards from the residence.

14. After the vehicle was moved to the new location, I again advised YOTKA that if he continued to speak with us, he needed to make it clear about his decision to do so, which he confirmed he wanted to do. After being advised of his constitutional rights again, YOTKA acknowledged those rights, waived those rights, and agreed to speak with us. During his interview, YOTKA stated in substance, and among other things, the following:

    a. YOTKA acknowledged trading pictures of children to the Kik user

8

referenced herein, which included sending pictures (described in detail in Exhibit A) that involved a "Sharpie" being inserted into the anus of the depicted minor children.

  b. YOTKA agreed that these materials consisted of child pornography.

  c. I showed YOTKA the images and one video referenced in Exhibit A. Among other things, YOTKA stated that the first time YOTKA sent these pictures and video was "to him", referring to the Kik user previously mentioned. YOTKA did not send the images or video to other members of the group on Kik and stated that "this was a one time incident."

  d. YOTKA does not store child pornography on his cellular phone and "probably already deleted" the images and videos discussed above.

  e. YOTKA then gave the agents verbal and written consent to search the contents of his Android 8 Plus cellular phone and stated there was no PIN required to access the cellular phone. YOTKA acknowledged the cellular phone he is referring to is the cellular phone that was on his person earlier in the morning when the FBI arrived at his residence. YOTKA also gave the agents verbal consent to access his Kik account and provided the password. YOTKA stated he was currently logged into his Kik account on his cellular phone.

  f. When asked if he believed what he had done was harmful to children, YOTKA responded "yes." YOTKA stated "I know what I did" and "I'm not proud of what I did." YOTKA agreed that someone who is harmful to children is also a

9

danger to children and should not be allowed around children.

15. Based upon the foregoing facts, I have probable cause to believe that on or about September 15, 2021, in the Middle District of Florida, SCOTT MATTHEW YOTKA, a/k/a "Scottnjax44", did knowingly distribute visual depictions using facilities of interstate commerce, that is, by cellular telephone via the internet, when the production of the visual depictions involved the use of minors engaging in sexually explicit conduct, and the visual depictions were of such conduct, in violation of 18 U.S.C. § 2252(a)(2).

_____
DANIEL R. MOXLEY, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before me this /7 day of September, 2021, at Jacksonville, Florida.

_____
JOEL B. TOOMEY
United States Magistrate Judge

10